Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

Nos. 04-08-00712-CR & 04-08-00713-CR

Donald Ray **McINTOSH,**
Appellant

v.

**STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court Nos. 220294 & 220291
Honorable Monica E. Guerrero, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed: November 18, 2009

AFFIRMED

Donald Ray McIntosh was found guilty by a jury of violating a protective order and resisting

transportation, and found not guilty of assault. The trial court sentenced McIntosh to one year in jail

and a $500 fine on the protective order charge and to ninety days in jail and a $100.00 fine on the

resisting transportation charge. McIntosh appeals, contending the judgments should be reversed

because the evidence is legally and factually insufficient to support the jury's verdicts, the trial court

erred by allowing the State to amend the information charging him with resisting transportation, and the trial court erred in denying his motion to dismiss for lack of a speedy trial. We affirm the trial court's judgments.

## BACKGROUND

Bexar County Deputy Sheriff Steven Wheeler testified that on June 26, 2007, he drove to a residence after someone at the location dialed 911, but terminated the call. When he arrived, Deputy Wheeler saw a woman and two children standing in the front yard of the residence. Deputy Wheeler testified the woman, later identified as Carolyn Miller, looked anxious and told him "he" had locked them out of the home and pushed her to the ground. By this time, a second deputy, Gil Martinez, arrived at the residence and both deputies went to the back yard to look for McIntosh. The deputies found him smoking a cigarette and began questioning him about his version of the events. After a short discussion, Deputy Wheeler decided to arrest McIntosh for "family violence" and assault. McIntosh was handcuffed with his arms behind his back, and the deputies walked him to the front of the residence. Deputy Martinez positioned McIntosh over the back of the patrol vehicle so he could search him for weapons before placing him in the patrol car. Deputy Martinez testified that although McIntosh was facing the car, McIntosh used the vehicle to push against the deputy and used his legs to kick backwards towards the deputy. Deputy Wheeler, who had been checking McIntosh's criminal history, testified he saw the altercation and went to assist Deputy Martinez. Deputy Wheeler told the jury he slapped McIntosh on the face and told him to calm down. When McIntosh continued to struggle with the deputies, Deputy Wheeler forced McIntosh to the ground and placed his forearm across McIntosh's neck to "secure" McIntosh on the ground. Deputy Wheeler, who weighed about 285 pounds, testified he laid his body on top of McIntosh. There were decorative stones on the

ground where McIntosh lay, and his face was cut in the process. McIntosh was provided medical treatment at the scene, and was taken to a hospital later that night. Deputy Wheeler testified that during the course of these events, Miller told the deputies she had a protective order against McIntosh and she showed the deputies a copy of the order. The order prohibited McIntosh from going within one hundred yards of Miller's residence.

One of Miller's daughters, fourteen-year-old B.M., testified she called 911 that day and witnessed McIntosh's arrest. She testified McIntosh did not believe he should be arrested and was "pulling back" from the deputy with his feet and arms. B.M stated the deputy was behind McIntosh trying to hold him by the cuffs but McIntosh kept "leaning" back into the officer. She also testified that one deputy told McIntosh to calm down and counted "from three to one" before he "threw him to the ground" with "some force." She explained the deputy had "warned" McIntosh to calm down and the deputy "put him down to the ground because he didn't calm down."

Two of the witnesses the State called to testify presented a different version of the events. Miller testified she never told the deputies McIntosh had assaulted her, but conceded she showed the deputies a copy of the protective order and that the house was her residence. Miller told the jury that when the deputies brought McIntosh to the front of the house, McIntosh was walking "peacefully" and inquired politely as to the reason for his arrest. According to Miller, Deputy Wheeler responded by calling McIntosh a "boy" and told him to "shut up." When McIntosh again asked why he was being arrested, Deputy Wheeler became angry, picked McIntosh up by his hair and the handcuffs, and threw him face down on the rocks while saying, "I'll show you what we do with boys like you." When McIntosh began to scream, Deputy Wheeler pulled McIntosh's arms up, forcing his face against the rocks. Miller told the jury that Deputy Wheeler stepped on McIntosh's neck with his

"steel-toed" boot and pulled his hair. Miller testified Deputy Wheeler used his foot to "grind" McIntosh's face into the rocks "as if putting out a cigarette," and that McIntosh fainted from the pain. Miller's other daughter, M.M., who was eleven years old at the time of trial, also told the jury she saw Deputy Wheeler use his foot to step on McIntosh's head.

## LEGAL AND FACTUAL SUFFICIENCY

### *Standard of Review*

We review a challenge to the legal sufficiency of the evidence by looking at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). In reviewing the factual sufficiency of the evidence, we look at the evidence in a neutral light, and ask whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

### *Discussion*

### **Resisting Transportation**

McIntosh contends the evidence is legally and factually insufficient to support his conviction for resisting transportation. The information filed against McIntosh alleged in part that McIntosh "did intentionally prevent and obstruct a person, namely: Gil Martinez, hereinafter referred to as complainant, whom the defendant knew to be a Peace Officer, from effecting TRANSPORTATION of THE DEFENDANT by using force against said complainant, to wit: PUSHING THE

COMPLAINANT." *See* TEX. PENAL CODE ANN. § 38.03 (a) (Vernon 2003).[1] McIntosh argues his only resistance came while he was on the ground and the resistance was simply an attempt to prevent injury to his face caused by the rocks. However, this argument ignores the testimony of both deputies and B.M. Miller that McIntosh was pushing with his body and kicking his legs against Deputy Martinez before Deputy Wheeler forced McIntosh to the ground. There is sufficient evidence for a reasonable jury to find beyond a reasonable doubt all the essential elements of resisting transportation.

Although Carolyn Miller testified McIntosh did not resist the deputies before being thrown to the ground, the jury was free to choose between the different versions of facts presented by the witnesses. We are required to defer to the jury's apparent credibility determinations, even in a factual sufficiency review. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). Notwithstanding the conflicting testimony, the evidence supporting the verdict is not so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust.

## Violation of Protective Order

In the violation of a protective order case, McIntosh was charged with intentionally and knowingly violating an October 10, 2006, order of the 166th District Court of Bexar County, Texas, issued pursuant to section 85.005 of the Texas Family Code, by "intentionally and knowingly going

---

[1] Section 38.03 (a) provides in relevant part that "[a] person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search, or transportation of the actor . . . by using force against the peace officer . . . ." TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2003).

to or near the RESIDENCE of CAROLYN MARIE MILLER." *See* TEX. PENAL CODE ANN. § 25.07(a) (Vernon Supp. 2009).[2]

McIntosh first contends the protective order is "invalid" because of an apparent conflict in its provisions. The protective order, a certified copy of which was admitted into evidence, contains an affirmative finding of family violence and orders, among other things, that McIntosh is prohibited from going within 100 yards of Miller's residence for a period of two years. The order recites that Miller and McIntosh agreed to the orders therein, and that "by the signatures below, the parties acknowledge that this agreement expresses the entire understanding and concord of the parties, and consent that the Court, without further notice, may enter binding orders in accordance with this agreement." The order is signed by the presiding judge. However, the signature lines where Miller and McIntosh were to indicate their approval of the form of the order each bear the notation "refused to sign."[3] McIntosh conclusorily asserts this renders the order "invalid," but he fails to cite any legal authority or make any argument in support of the assertion. McIntosh does not argue the judge who issued the order was without authority or jurisdiction to enter it or that the order was otherwise void.

McIntosh also asserts the evidence is insufficient to support the verdict because Miller and McIntosh "were living together, and . . . Miller actually moved back in with [] McIntosh where he was living." McIntosh cites only to trial counsel's closing argument. He does not cite to any

---

[2] Section 25.07(a) provides in part: (a) A person commits an offense if, in violation of . . . an order issued under . . . Chapter 85, Family Code, . . . the person knowingly or intentionally: . . . (3) goes to or near any of the following places as specifically described in the order . . .: (A) the residence . . . of a protected individual or a member of the family or household . . . . TEX. PENAL CODE ANN. § 25.07(a) (Vernon Supp. 2009).

[3] Miller and McIntosh appealed the protective order to this court, which affirmed the order. *Miller-McIntosh v. State*, No. 04-06-00871-CV, 2009 WL 2608661 (Tex. App.—San Antonio Sept. 12, 2007, no pet.) (mem. op., not designated for publication).

evidence in the record, nor does he provide any legal authority or argument about how these facts render the evidence insufficient[4].

Because McIntosh has not provided argument or authority to support his contention that the evidence is legally and factually insufficient to support the verdict on the violation of a protective order charge, the issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(h); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006). Nevertheless, because the undisputed evidence established McIntosh was found at Miller's residence in violation of a court order issued under Chapter 85 of the Family Code, we hold the evidence is both legally and factually sufficient to support the verdict, and overrule McIntosh's first issue.

### AMENDMENT OF INFORMATION

McIntosh next complains he was denied a fair trial because the trial court allowed the State to amend the information charging resisting transportation on the day of trial. Again, McIntosh cites no legal authority to support his claim. We will nevertheless consider this issue in the interest of justice.

The original information alleged McIntosh resisted "arrest" by "striking the complainant with the hand of the defendant." On the day of trial, the State moved to amend the information by substituting the word "transportation" for "arrest," and by substituting "pushing the complainant" as the manner and means allegation. McIntosh objected to the amendment as being untimely. After hearing McIntosh's objection, the State requested a continuance, to which McIntosh objected. The trial court overruled McIntosh's objection and permitted the amendment, but offered a ten-day

---

[4] Section 25.07(d) of the Penal Code provides that "[r]econciliatory actions or agreements made by persons affected by an order do not affect the validity of the order or the duty of a peace officer to enforce this section." TEX. PENAL CODE ANN. § 25.07(d) (Vernon Supp. 2009).

continuance to allow McIntosh adequate time to prepare. McIntosh declined the offer and expressed his desire to proceed with trial.

Article 28.10 of the Texas Code of Criminal Procedure, which governs the amendment of the charging instrument, provides in part:

> (a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merit commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.
>
> . . .
>
> (c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX. CODE CRIM. PROC. ANN. art. 28.10 (Vernon 2006). The State concedes the trial court erred by allowing the amendment on the day of trial. Because the amendment violated a statutory rather than constitutional right, we will reverse only if the error affected McIntosh's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Dukes v. State*, 239 S.W.3d 444, 447 (Tex. App.—Dallas 2007, pet. ref'd). The untimely amendment of a charging instrument affects a defendant's substantial rights if the instrument did not inform the defendant of the charge against him sufficiently to allow him to prepare his defense, or if prosecution under the erroneous charging instrument would subject the defendant to the risk of being prosecuted later for the same crime. *Trejos v. State*, 243 S.W.3d 30, 42 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Dukes v. State*, 239 S.W.3d at 447-48 (citing *Gollihar v. State*, 46 S.W.3d 243, 248 (Tex. Crim. App. 2001)).

McIntosh does not argue, and nothing in the record suggests, the amendment of the information hampered McIntosh's ability to prepare his defense. McIntosh's defense appears to have been that he did not resist the deputies until after he had been thrown to the ground and had his face pushed against the rocks. The jury charge contained a self-defense instruction that permitted the jury to acquit McIntosh if his use of force was reasonable in response to Deputy Martinez's use or attempted use of unlawful force. The State called as a witness every person the record reflects observed the events except McIntosh. McIntosh was able to establish his defense through these witnesses. McIntosh has not pointed to any evidence he was unable to procure because of the untimely amendment.

Nor would the State be able to prosecute McIntosh on the original charge in a subsequent action. Section 38.03 of the Texas Penal Code provides that a person commits an offense if he intentionally prevents or obstructs a peace officer from effecting "an arrest, search, or transportation" of the actor. This court has not previously considered whether section 38.03 defines three separate offenses — resisting arrest, resisting search, and resisting transportation — or three different ways in which the single offense may be committed. However, three of our sister courts have concluded section 38.03 defines a single offense that a person may commit by obstructing or preventing a peace officer from performing his duty, whether that duty involves the arrest, search, or transportation of the actor. *See Clement v. State*, 248 S.W.3d 791, 802 (Tex. App.—Fort Worth 2008, no pet.); *Hartis v. State*, 183 S.W.3d 793, 799 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Finster v. State*, 152 S.W.3d 215, 219 (Tex. App.—Dallas 2004, no pet.). We are persuaded by the reasoning of those

courts and agree that section 38.03 defines a single offense.[5]  Accordingly, the State would not be able to maintain a subsequent prosecution of McIntosh for resisting his arrest by striking Deputy Martinez.

Because McIntosh's ability to prepare his defense was not detrimentally affected, and because double jeopardy will prevent the State from prosecuting McIntosh on the original charge, we hold the late amendment of the information did not affect McIntosh's substantial rights.

### SPEEDY TRIAL

In his third issue, McIntosh argues the trial court erred in denying his motion to dismiss based on a violation of his right to a speedy trial.  On the day the trial began, August 21, 2008, McIntosh's counsel asked the trial court to rule on a *pro se* motion to set aside the information that alleged the State violated McIntosh's right to a speedy trial.  *See* TEX. CODE CRIM. PROC. ANN. art. 28.061 (Vernon 2006) (stating if motion to set aside information for failure to provide speedy trial is sustained, court shall discharge defendant).  During an informal hearing and without receiving any evidence, the court denied the motion.

A speedy trial is guaranteed by both the United States and Texas Constitutions.  *See Barker v. Wingo*, 407 U.S. 514 (1972) (holding speedy trial protected under the Sixth Amendment); *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002) (holding Article 1, § 10 of the Texas Constitution guarantees a speedy and public trial).  We review the right to a speedy trial guaranteed under the Texas Constitution under the four-prong  balancing test established by the United States Supreme Court in *Barker v. Wingo*.  *Zamorano*, 84 S.W.3d at 648.  Those factors are the length of

---

[5] Although the trial violated article 28.10(a) by allowing the information to be amended on the day trial commenced, the court did not violate article 28.10(c) because the amendment did not charge McIntosh with a different offense. *See* TEX. CODE CRIM. PROC. ANN. art. 28.10(c) (Vernon 2006).

the delay, the reasons for the delay, whether the defendant asserted his right to a speedy trial, and whether the defendant suffered any prejudice as a result of the delay. *Id.* at 647-48. The State has the burden to justify the length of the delay and the defendant has the burden to demonstrate his assertion of the right to a speedy trial and that he was prejudiced. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). "[T]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280-81. We review the trial court's ruling using a bifurcated standard. We apply an abuse of discretion standard to fact findings, and review *de novo* the application of the law to the facts. *Zamorano*, 84 S.W.3d at 648. We imply findings of fact in favor of the trial court's ruling so long as they are supported by the record. *Id.*

### Length of the Delay

McIntosh was incarcerated approximately fourteen months awaiting trial on these charges. A delay of more than one year is sufficient to trigger a speedy trial inquiry. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003); *see Celestine v. State*, No. 14-08-00766-CR, 2009 WL 3365893, *3 (Tex. App.—Houston [14th Dist.] Sept. 10, 2009, no pet.) (stating delay of more than one year is "presumptively prejudicial"); *Orand v. State*, 254 S.W.3d 560, 566 (Tex. App.—Fort Worth 2008, pet. ref'd) (same). A delay of fourteen months weighs against the State.

### Reason for the Delay

When we review the second factor, we assess different weights to the different reasons the State offers to justify the delay. *Shaw*, 117 S.W.3d at 889. "Some reasons are valid and serve to justify the delay, while other reasons are not valid and do not serve to justify the delay." *Id.* The

prosecution of the defendant on other charges may be a valid reason for a delay in bringing him to trial. *Easley v. State*, 564 S.W.2d 742, 745 (Tex. Crim. App. 1978). However, the State must offer argument and proof to sustain its burden on this factor. *See Dragoo*, 96 S.W.3d at 314 n.4.

The State asserted part of the delay was due to a felony charge that was pending against McIntosh until March 2008, when it was dismissed. During the hearing, the prosecutor told the judge it was in the "[d]efendant's best interests" to "wait" to resolve the misdemeanor cases until the felony was concluded. In its brief, the State argues that because McIntosh did not challenge this statement during the hearing, this court should attribute part of the delay to McIntosh's "desire to dispose of his felony case first." We decline to do so. The State offered no proof regarding the felony charge and did not attempt to explain how a pending case that was dismissed justified any delay. Nor is there any evidence from which one could infer that it was McIntosh's desire to dispose of the felony case first. In the absence of proof, "a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Id*. at 314.

The State also argues part of the delay was due to appellant's counsel being allowed to withdraw. The record indicates that approximately six months after the cases were filed, an attorney for appellant moved to withdraw, and the motion was granted. However, the State has not shown whether this caused any delay in setting the causes for trial. Finally, the State points to docket sheet entries indicating that on May 28, 2008, the State announced "ready" for trial in both cases, but the cases were reset to June because defense counsel was in trial in another court. We agree this part of the delay should not be attributed to the State. The docket sheets reflect several other trial settings, but the State offered no proof or argument as to the reasons the settings were passed. Based on the record before us, this factor weighs slightly against the State.

***Defendant's Assertion of his Right to Speedy Trial***

McIntosh has the burden to demonstrate he asserted his right to a speedy trial. *Cantu*, 253 S.W.3d at 281. Although he contends in his brief that he asserted his right, he refers only to the *pro se* motion to set aside that his attorney urged on the first day of trial. A motion seeking dismissal of a charge based on violation of a speedy trial right rather than a motion requesting a speedy trial "will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283.

The record in neither case contains a motion for a speedy trial. However, the *pro se* motion to set aside the information, which McIntosh signed July 21, 2008 and filed in each case, recites that McIntosh filed a "Motion for Speedy Trial" on September 24, 2007.[6] Assuming the motion was filed and that it asked for a speedy trial, as opposed to dismissal, the motion was never set for hearing nor ruled upon by the trial court. Because McIntosh has not met his burden to show he diligently asserted his rights, this factor weighs slightly against McIntosh.

***Prejudice to the Defendant***

McIntosh also has the burden to demonstrate any prejudice flowing from the lack of a speedy trial. *Id.* at 281. When we analyze the prejudice to the defendant, we do so in light of the interests the right to a speedy trial was designed to protect: "(1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's

---

[6] McIntosh also filed a *pro se* petition for a writ of mandamus in this court on August 11, 2008, seeking to compel the trial court to rule on various *pro se* motions, including a motion for speedy trial, alleged to have been filed in the trial court on September 24, 2007. This court denied the requested relief because McIntosh was represented by counsel and was not entitled to hybrid representation. *See In re McIntosh*, No. 04-08-00600-CR, 2008 WL 4056546 (Tex. App.—San Antonio Aug. 29, 2008, orig. proceeding) (mem. op., not designated for publication).

defense will be impaired." *Id.* at 285. Of these interests, the latter is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

McIntosh did not offer any evidence or argument on this issue at the hearing, and he does not argue in his brief that he was prejudiced by the delay. In his motion to set aside, McIntosh asserted witnesses had "become unavailable," but did not identify any witnesses he would be unable to call or specify what their testimony would have been. *See Harrison v. State*, 282 S.W.3d 718, 722 (Tex. App.—Amarillo 2009, no pet.) (holding to demonstrate prejudice due to unavailable witness, "defendant must present proof both of the efforts to locate the witness and that the witness would have benefitted the defense"); *Hunt v. State*, 237 S.W.3d 434, 438 (Tex. App.—Waco 2007, pet. ref'd) (holding that to establish prejudice, defendant must show witness is unavailable, the testimony might be relevant and material to defense, and he exercised due diligence to locate witness). This factor weighs heavily against McIntosh.

After weighing the four factors, we conclude the trial court did not err in denying the motion to set aside the information due to lack of a speedy trial. Although the fourteen month delay was sufficient to trigger the speedy trial inquiry, the State was responsible for only part of the delay, no bad faith on the part of the State is shown by the record, and McIntosh failed to establish he asserted his right to a speedy trial or was prejudiced by the delay.

The judgments of the trial court are affirmed.

Steven C. Hilbig, Justice

PUBLISH