NO. 07-10-00345-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 25, 2012

RICKY CASTILLO JALOMO, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 21,317-C; HONORABLE ANA ESTEVEZ, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Ricky Castillo Jalomo, appeals his conviction for aggravated assault with a deadly weapon[1] and resulting twenty-year sentence. On appeal, he contends he was denied his constitutional right to a speedy trial. Further, he challenges the sufficiency of the evidence and the trial court's denial of his motion for continuance. We will affirm.

---

[1] See TEX. PENAL CODE ANN. §§ 22.01, 22.02(a)(2)(West 2011).

## Factual and Procedural History

The instant case stemmed from an encounter in March 2007 between appellant and complainant Ricardo Ballin. Appellant was dating Ballin's ex-girlfriend, causing animosity between the two men. This particular conflict began outside a nightclub and, after appellant, as driver of one vehicle, chased down the vehicle in which Ballin was a passenger, culminated in Ballin being dragged from the vehicle and severely beaten by five men, one of whom struck Ballin a number of times with a pool cue. Ballin suffered facial fractures, lacerations, and a concussion as a result of the beating.

Appellant was originally indicted on charges of aggravated assault with a deadly weapon in June 2007. The State moved to dismiss that prosecution in May 2009 after it learned that appellant was rendered paraplegic in a 2008 shooting. On February 17, 2010, after learning that appellant was involved in yet another violent incident, the State considered him a continued threat and re-indicted him on charges of aggravated assault with a deadly weapon in connection with the 2007 incident. A Randall County jury found him guilty of the offense as charged and assessed punishment at twenty years' imprisonment and a $2,500.00 fine.

On appeal from that conviction, appellant raises three issues. First, he contends that the trial court erred in denying his motion to dismiss for violation of his constitutional right to a speedy trial. Secondly, he maintains that the evidence is insufficient to support his conviction. Finally, he contends that the trial court abused its discretion in denying his motion for continuance and proceeding to trial over his announcement of "not ready."

2

Right to a Speedy Trial

Standard of Review and Applicable Law

We analyze federal constitutional speedy trial claims "on an ad hoc basis" by weighing and then balancing the factors outlined in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972): (1) length of delay, (2) reason for delay, (3) assertion of right, and (4) prejudice to the accused. Cantu v. State, 253 S.W.3d 273, 280 (Tex.Crim.App. 2008). A delay that is unreasonable enough to be considered presumptively prejudicial triggers the Barker analysis. Id. at 281; see Doggett v. United States, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

We review the trial court's ruling on a speedy trial issue under a bifurcated standard of review, applying "an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." Zamorano v. State, 84 S.W.3d 643, 648 (Tex.Crim.App. 2002). Review of the individual Barker factors necessarily involves factual determinations and legal conclusions, but "[t]he balancing test as a whole . . . is a purely legal question." Id. at 648 n.19 (quoting Johnson v. State, 954 S.W.2d 770, 771 (Tex.Crim.App. 1997)).

Analysis

(1) Extent of Delay

The parties initially disagreed on the dates to be used when calculating the delay relevant to appellant's speedy trial claim. Appellant urged that the relevant delay is measured from the date of the first indictment to the date trial began on the subsequent

one.  The State maintained that the delay is measured from the date of the second indictment to the date of trial on that indictment.

We begin with the general proposition that the time in which a defendant is formally accused is the relevant period for evaluating a speedy trial issue.  See United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  It follows that "[o]nce charges are dismissed, the speedy trial guarantee is no longer applicable." United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).  More specifically, the Texas Court of Criminal Appeals has held that the time between a good faith dismissal of criminal charges and filing of new charges is not to be considered in a speedy trial claim.  See Deeb v. State, 815 S.W.2d 692, 705 (Tex.Crim.App. 1991) (citing MacDonald, 456 U.S. at 7).  When confronted with a case involving similar time frames, our sister court delivered a well-organized application of Deeb's principles in State v. Guerrero, 110 S.W.3d 155 (Tex.App.—San Antonio 2003, no pet.).  In Guerrero, the court heard the State's appeal from the trial court's dismissal of the indictment based on a speedy trial violation.  Id. at 158.  In its review, the court included in its calculation of the relevant delay the time period from the "initial indictment . . . to the date when the trial court granted the State's motion to dismiss," which, as here, was approximately twenty-three months.  Id. at 159.  Also included was the seven-month period between the subsequent indictment and the trial court's disposition of that indictment, which was only slightly longer than the six-month period before us.  See id. The Guerrero court concluded that the relevant time period with which it was to evaluate the speedy trial issue was approximately thirty months.  Id.

4

Based on this authority and assuming, in the absence of evidence to the contrary, that the State's 2009 dismissal was a good faith dismissal,[2] we conclude that the relevant times of delay here should include (1) the approximately twenty-three months between the original indictment (06/20/2007) and the first dismissal (05/13/2009) and (2) the approximately six months between the subsequent indictment (02/17/2010) and the date trial began on the subsequent indictment (08/23/2010). Based on these figures, the total delay relevant to the speedy trial inquiry at issue is approximately twenty-nine months. Authority supports the conclusion that a twenty-nine-month delay is sufficiently long to be "presumptively prejudicial" and, thus, serves to trigger our examination of the remaining three Barker factors. See Shaw v. State, 117 S.W.3d 883, 889 (Tex.Crim.App. 2003); Guerrero, 110 S.W.3d at 159.

(2) Reason for delay

The State bears the burden of justifying the delay. Emery v. State, 881 S.W.2d 702, 708 (Tex.Crim.App. 1994). We assign various weights to various reasons for the delay. See Dragoo v. State, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003); Zamorano, 84 S.W.3d at 649. When the record is silent regarding the reason for the delay, we

---

[2] As we will discuss more thoroughly, though appellant seems to contend that the State somehow breached an agreement it had made with the defendant by re-indicting him on the previously dismissed charges, the record does not support such finding. Nor do appellant's assertions transform the State's dismissal into one of bad faith. To the contrary, the record before us suggests that the State dismissed the pending assault charges in light of appellant's severe injuries resulting in paralysis and the State's conclusion that appellant was no longer a threat to the community. That later developments (in the form of appellant's continued criminal activity) caused the State to reconsider its conclusion does not render the previous dismissal a bad faith dismissal.

presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay. Dragoo, 96 S.W.3d at 314.

The record of the pretrial hearing on appellant's speedy trial motion demonstrates that at least some of the first twenty-three-month delay pertaining to the original indictment, prior to dismissal, was attributable to another, related ongoing prosecution of appellant in Potter County to which Randall County deferred. See Dragoo, 96 S.W.3d at 314 n.4; Easley v. State, 564 S.W.2d 742, 745 (Tex.Crim.App. 1978); see also McIntosh v. State, 307 S.W.3d 360, 367 (Tex.App.—San Antonio 2009, pet. ref'd) (observing that "prosecution of the defendant on other charges may be a valid reason for a delay in bringing him to trial," provided that the State "offer argument and proof to sustain its burden on this factor"). Pretrial testimony indicates that the Potter County prosecution was set for trial, and a jury was empanelled. However, for an unidentified reason, in 2008 and before appellant was shot, the Potter County case was dismissed, permitting Randall County to resume prosecution under the original indictment.

In July 2008, the original lead prosecutor learned that appellant was seriously wounded in an unrelated shooting and was rendered paraplegic. The record suggests no activity related to the case from that point until March 2009 when defense counsel sent medical records to the State to confirm appellant's medical condition. The State considered the "extenuating circumstances" and, "in the interest of justice," decided not to advance the case against appellant any further. In May 2009 and citing appellant's serious health problems, the State moved to dismiss pending charges. At the hearing

6

on appellant's motion to dismiss, the State asserted and provided testimony suggesting that it did not prosecute the case during the months after it learned of appellant's serious injuries because of his attendant long and intensive recovery period. Appellant testified to his six-month hospital stay and the lengthy rehabilitation process.

After the State learned that appellant was involved in another violent incident, it re-indicted appellant, whom it now considered a continued threat to the community, in February 2010. Considering the State's evidence in support of its explanations for the initial delay–the concurrent prosecution in Potter County and, later, a delay connected in some degree to appellant's significant injuries–this factor seems to weigh slightly in favor of valid justification for this portion of the delay. See Easley, 564 S.W.2d at 745; McIntosh, 307 S.W.3d at 367–68. The record provides little evidence regarding the six-month delay between re-indictment and trial. We note that this portion of the delay is not remarkably lengthy and would appear to be attributable to the regular course of the administration of justice, a more neutral reason. See Zamorano, 84 S.W.3d at 649 (noting that neutral reasons for delays, such as overcrowded dockets, are weighed less heavily against the State).

Appellant maintains that, by re-indicting appellant, the State breached its agreement with appellant that led to the 2009 dismissal. The State's bad faith, he argues, is imputed to its delay in bringing appellant to trial. Appellant then relies on the proposition that a bad faith delay in bringing a defendant to trial is a "virtually automatic" speedy trial violation. See Doggett, 505 U.S. at 657 (citing Barker, 407 U.S. at 531).

7

Appellant's contention is premised on the fact that the cause was originally dismissed as a part of a plea negotiation. However, nothing in the record supports such a characterization. The State's motion to dismiss cites the following basis for dismissal:

> While this cause was pending[,] the defendant was shot twice during a drive-by. Medical records obtained by the State reveal that the Defendant is now a paraplegic and suffers additional serious health problems as a result of the wounds.

Further, the original prosecutor unequivocally and repeatedly testified that he and defense counsel never arrived at any sort of bargained-for agreement to dismiss, a position consistent with the basis advanced in the State's motion to dismiss.

(3) Assertion of right

Appellant is responsible for asserting his right to a speedy trial. State v. Munoz, 991 S.W.2d 818, 825 (Tex.Crim.App. 1999). We do consider the fact that appellant asserted his right in a motion to dismiss. Authority suggests that the fact that a defendant seeks dismissal, rather than prompt commencement of trial, is relevant to this factor. See Phillips v. State, 650 S.W.2d 396, 401 (Tex.Crim.App. 1983).

Appellant maintains that he asserted his right to a speedy trial by negotiating the 2009 dismissal of the original indictment. In addition to the previously cited evidence indicating that there was never a negotiated agreement regarding dismissal, the original prosecutor testified that there was no mention of speedy trial concerns during the pendency of the original indictment. Indeed, the record would support this conclusion. The State's motion to dismiss the first indictment and the evidence adduced at the hearing on appellant's motion to dismiss the second one fail to suggest that appellant's

8

right to a speedy trial in any way factored into the dismissal. In fact, at the pretrial hearing, the State asked the trial court to take judicial notice that no assertion of the right to a speedy trial had been "formally placed" before the trial court. In response and without objection, the trial court took judicial notice of the case file. The record demonstrates that appellant failed to assert his right to a speedy trial during the twenty-three months in which the original indictment was pending prior to dismissal.

After re-indictment, the record shows that appellant first asserted his right in a motion to dismiss three days before trial. We also note that appellant moved for a continuance the day before filing his motion to dismiss. Appellant's rather paltry assertion of his right, by seeking dismissal on the eve of trial, ultimately, weighs against appellant's claim that he was denied his right to a speedy trial.

(4) Prejudice

We consider this factor in light of the interests the right to a speedy trial was designed to protect: (1) oppressive pretrial incarceration, (2) excessive anxiety over the pending charges, and (3) impairment of an accused's ability to present a defense. Barker, 407 U.S. at 532. The defendant bears the burden of making an initial showing that the delay was prejudicial. Munoz, 991 S.W.2d at 826. When the defendant makes a *prima facie* showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." Id. at 826 (quoting Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex.Crim.App. 1973)).

9

Appellant asserts the following considerations as evidence that he was prejudiced "in connection with the prosecution": (1) having been arrested three times, (2) having been shot while the case was pending, (3) "anxiety," and (4) excessive bond. The State points out appellant's failure to demonstrate that the delay impaired his ability to make a defense. The State also emphasizes appellant's acquiescence to the delay and the fact that appellant was out on bond at all relevant times.

Here, pretrial incarceration is not a significant issue because the record suggests that appellant was out on bond during the delay.[3] Appellant testified that he experienced "anxiety" and the concern about the pending charges bothered him "a lot." Though not offered to directly address appellant's evidence of prejudice, we note the evidence that appellant had also faced aggravated assault charges in Potter County and life-threatening gunshot wounds, both of which likely contributed to his anxiety.

Though advanced in support of the sufficiency of the evidence challenge, appellant also emphasizes that one of the witnesses to the incident was on felony probation at the time of the incident and would have had to have admitted that she was at the bar that night, likely in violation of the terms of her probation. Consequently, appellant contends, had the State brought appellant to trial earlier–while the witness was still on probation–it may have had to do so without the benefit of her testimony since she may have refused to testify based on her privilege against self-incrimination. Though the connection is rather tenuous, his contention lends itself to the impairment-of-defense interest. And, with respect to this interest, affirmative proof of particularized

---

[3] Except, we note, to the extent appellant could be read to intimate that *not* being incarcerated during the delay in prosecution indirectly contributed to his being shot.

10

prejudice is not essential to every speedy trial claim, because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett, 505 U.S. at 655. However, any "presumption of prejudice" is extenuated by the defendant's acquiescence in the delay. See id. at 658. The State seizes on appellant's acquiescence here.

In balancing the Barker factors, we conclude that the prejudice weighs slightly in favor of appellant's claim, but diminishes when we consider that he acquiesced to the delay. When we evaluate this diminished prejudice in light of the both neutral and valid reasons which weighed against appellant's claim and appellant's meager assertion of his right to a speedy trial by seeking dismissal on the eve of trial, we conclude that the balancing test ultimately weighs against appellant's contention that his right to a speedy trial was violated on these facts. We overrule appellant's issue.

## Sufficiency of the Evidence

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful

that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson."  Id. When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding.  See id. at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review).  "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

Analysis

Aside from the men who participated in the assault, there were three witnesses to the events surrounding the 2007 assault: Sandra Mendez, Kristie Palacios, and complainant Ballin.  Ballin testified that he recalls little of the night as a result of his intoxication and the injuries he sustained, leaving Mendez and Palacios as the primary witnesses.  The focal point of appellant's contention is their conflicting testimony regarding who struck Ballin with the pool cue.

Though she did not know his name at the time, Mendez recognized appellant that night as someone she had seen in the past.  She testified that appellant was at the scene of and "involved" in the beating.  She testified that appellant pulled Ballin from the vehicle but was *not* the man who wielded the pool cue; an unidentified assailant did.  As the five men beat Ballin and as Palacios summoned police, she eventually wrestled the

12

bloody pool cue from the unidentified man and swung it in the direction of Ballin's assailants who promptly left.

Mendez's testimony that another man struck Ballin with the pool cue runs contrary to what Palacios recalled. Palacios saw appellant strike Ballin with the cue as the four other men held Ballin down and kicked and punched him. She testified that it was appellant from whom Mendez wrestled away the cue. Consistent with Mendez, she testified that appellant pulled Ballin out of the vehicle.

Mendez and Palacios testified to accounts of the night that were, in most part, consistent. But they testified differently as to the identity of the man who struck Ballin with the pool cue. The State acknowledges this direct conflict in testimony and correctly characterizes appellant's sufficiency complaint as relating to resolution of this conflict in testimony and witness credibility which, of course, this Court does not reconsider. Resolution of conflicts or inferences therefrom lies within the exclusive province of the jury as trier of fact, and it may choose to believe all, none, or some of the evidence or testimony presented. Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex.Crim.App. 1995).

Further, appellant's contentions fail to account for the fact to which both Mendez and Palacios testified: it was appellant who forcibly removed Ballin from the vehicle and dragged him outside where the five men commenced beating and kicking him. Under the trial court's charge, the jury was authorized to find appellant guilty as either principal or party to the charged offense. See TEX. PENAL CODE ANN. §§ 7.01, 7.02(a)(2) (West 2011); Vega v. State, 267 S.W.3d 912, 915–16 (Tex.Crim.App. 2008). Appellant does

13

not challenge the sufficiency of the evidence[4] to support the jury's possible conclusion that, based on uncontroverted evidence of appellant's participation in or instigation of the beating, appellant was guilty, as a party, of aggravated assault. The evidence was sufficient to support the jury's finding that appellant was, at a minimum, a party to the assault. See Vega, 267 S.W.3d at 915 (concluding that, if hypothetically correct jury charge for case would authorize jury to convict on alternative theories of liability, reviewing court must deem evidence sufficient if sufficient under any theory of liability). We overrule appellant's second issue.

## Denial of Motion for Continuance

### Standard of Review and Applicable Law

The denial of a motion for continuance is within the sound discretion of the trial court, and we review the trial court's ruling for an abuse of that discretion. Renteria v. State, 206 S.W.3d 689, 699 (Tex.Crim.App. 2006). An appellant claiming erroneous denial of a motion for continuance must show (1) the trial court erred in denying the motion for continuance, and (2) such denial harmed him in some tangible way. See Gonzales v. State, 304 S.W.3d 838, 843 (Tex.Crim.App. 2010).

### Analysis

The trial court granted the State's amendment on August 12, at least ten days before trial. The State amended the indictment to include notice of its intent to use appellant's prior conviction at the punishment phase of trial. On August 19, appellant

---

[4] Nor does appellant raise a point of error related to jury charge error.

14

moved for a continuance. Put generally, the bases of his motion were (1) discussions regarding State's plea offers, (2) denial of access to investigators, and (3) lack of notice of amendment to indictment. On appeal, it appears that appellant focuses on lack of notice of the amendment as a basis for seeking a continuance.

Although this issue as presented raises a variety of sub-issues,[5] we note that the substance of the amendment was the State's intent to use a prior conviction to enhance punishment. So, appellant's contentions on appeal must be directed at the adequacy of the State's notice of its intent to enhance punishment. Looking at the issue as such, we note that, contrary to appellant's contention, article 28.10 has no application in this context. See TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2006); Villescas v. State, 189 S.W.3d 290, 294 (Tex.Crim.App. 2006); Johnson v. State, 214 S.W.3d 157, 158–59 (Tex.App.—Amarillo 2007, no pet.). The Villescas court concluded the Brooks notice requirement was of "constitutional origin" and that a ten-day period had no special significance in the determination of the timeliness of the State's notice of intent to seek enhanced punishment. See Villescas, 189 S.W.3d at 294 (discussing Brooks v. State, 957 S.W.2d 30, 34 (Tex.Crim.App. 1997)). Our task, instead, is to determine whether constitutionally adequate notice was given. See id. at 294 (citing Oyler v. Boles, 368 U.S. 448, 452, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). More specifically, in the case at

---

[5] On appeal and citing TEX. R. CIV. P. 21a, appellant argues that the faxed document memorializing the amendment was deemed received three days later, on August 15, less than 10 days before trial and, consequently, ran afoul of TEX CODE CRIM. PROC. ANN. arts. 1.27 and 28.10. Appellant cites no authority to support the propriety of applying a rule of civil procedure in a criminal context, and the State takes issue with this approach. Having disposed of this issue on other grounds, we need not address the merits of such an approach.

bar, we must determine whether appellant was denied constitutionally adequate notice and, therefore, provided the trial court with a basis for his continuance.

In determining whether constitutionally adequate notice was given on these facts, we observe that "[i]t is well-settled . . . that due process does not require pretrial notice 'that the trial on the substantive offense will be followed by a habitual criminal proceeding.'" Pelache v. State, 324 S.W.3d 568, 576 (Tex.Crim.App. 2010) (quoting Oyler, 368 U.S. at 542). Based on this well-settled authority that pretrial notice of intent to enhance is generally not even required, the trial court could have concluded that the State's notice of intent to enhance punishment was constitutionally adequate in terms of timeliness when it was, in fact, given well in advance of trial. Because appellant received notice beyond the minimum required by due process, the trial court could have denied appellant's motion for a continuance made on the basis of notice and did not abuse its discretion by doing so. See Gonzales, 304 S.W.3d at 843.

Further, appellant has not shown that the denial of a continuance rendered him unable to prepare a defense to the enhancement allegations. He makes no assertion that, had he had more time, he could and would have prepared a defense to the enhancement allegation. To the contrary, the record shows that appellant pleaded true to the enhancement allegation at the opening of the punishment phase. So, appellant has failed to demonstrate the denial of his motion for continuance harmed him in some tangible way. See id. We overrule appellant's third and final issue.

16

## Conclusion

Having overruled the three issues appellant has presented, we affirm the trial court's judgment of conviction.

Mackey K. Hancock
Justice

Do not publish.