**Opinion filed May 28, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00209-CR

_____

## THE STATE OF TEXAS, Appellant

## V.

## RANDY VIRGIL ECHOLS, Appellee

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No. CR04341**

## M E M O R A N D U M   O P I N I O N

The State reindicted Appellee, Randy Virgil Echols, on two counts of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021 (West 2019). Appellee moved to dismiss the indictment, contending that his speedy-trial rights were violated. The trial court agreed and dismissed the indictment. In two issues on appeal, the State contends that (1) Appellee's right to a speedy trial was

not violated and (2) Appellee's due process rights were not violated. We reverse and remand.

*Background Facts*

On September 4, 2011, Appellee was arrested for aggravated sexual assault of a child. The offenses were alleged to have occurred on or about the same day. On October 27, 2011, Appellee was indicted on three counts of aggravated sexual assault of a child and one count of indecency with a child. Appellee's trial began on May 21, 2012. On May 24, 2012, the jury found Appellee not guilty of one count of aggravated sexual assault of a child and guilty of indecency with a child, and the final two counts of aggravated sexual assault of a child resulted in a hung jury. The trial court declared a mistrial for the two counts of aggravated sexual assault that had resulted in a hung jury. Appellee was sentenced to twenty years' imprisonment upon being convicted of indecency with a child.

Appellee appealed his conviction of indecency with a child to this court, and we issued mandate affirming the conviction on March 6, 2014. *See Echols v. State*, No. 11-12-00149-CR, 2013 WL 9674604 (Tex. App.—Eastland Aug. 22, 2013, pet. ref'd) (mem. op., not designated for publication). Appellee's petition for discretionary review was refused by the Court of Criminal Appeals on November 27, 2013. The State dismissed the two remaining indictments on October 30, 2015. On May 3, 2017, Appellee filed a pro se Application for Writ of Habeas Corpus contending, among other things, that his trial counsel rendered ineffective assistance by failing to watch and utilize a video of the child-complainant's prior statements to a counselor containing clearly exculpatory evidence on his conviction for indecency with a child. After the trial court subsequently issued findings of fact and conclusions of law on the writ of habeas corpus issues, the Court of Criminal Appeals agreed that Appellee's trial counsel was ineffective and set aside the conviction on October 10, 2018.

On July 31, 2018, a few months before the Court of Criminal Appeals set aside the conviction, the State reindicted Appellee on the two counts of aggravated sexual assault of a child that had resulted in a mistrial. On April 23, 2019, Appellee filed a motion to dismiss for failure to provide a speedy trial on the current indictment. After a hearing on the motion to dismiss, the trial court granted Appellee's motion and dismissed the indictment with prejudice. This appeal ensued.

*Standard of Review*

A trial court's ruling on a speedy-trial claim is reviewed under a bifurcated standard of review. *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (citing *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)). We review a trial court's determination of legal issues de novo, and we review factual issues under an abuse of discretion standard. *Id.* A review of the individual *Barker*[1] factors necessarily involves fact determinations and legal conclusions, but "[t]he balancing test as a whole . . . is a purely legal question." *Id.* (alterations in original) (quoting *Zamorano*, 84 S.W.3d at 648 n.19). Under an abuse of discretion standard, we view all of the facts in the light most favorable to the trial court's ultimate ruling. *Id.* We defer not only to a trial court's resolution of disputed facts, but we also defer to the reasonable inferences drawn from those facts. *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005). The trial judge may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so. *Id.* at 728. This court reviews a trial court's ruling on a motion to dismiss for want of a speedy trial "in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). Where, as here, the trial court granted the motion to dismiss in favor of Appellee, we presume

---

[1]*Barker v. Wingo*, 407 U.S. 514, 530 (1972).

that the trial court resolved any factual disputes or credibility determinations in favor of Appellee. *See Zamorano*, 84 S.W.3d at 648.

*Analysis*

*I. Speedy Trial*

In its first issue on appeal, the State contends that the trial court erred in dismissing the indictment on speedy-trial grounds. The Sixth Amendment to the United States Constitution affords all criminal defendants the right to a speedy trial. U.S. CONST. amend. VI. This right was made applicable to State criminal prosecutions by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 222–23 (1967).

After a person is arrested or charged, a speedy-trial claim is triggered by a passage of time that is unreasonable enough under the circumstances to be "presumptively prejudicial." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Post-accusation delay that approaches one year "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). To determine whether an accused has been denied his right to a speedy trial, courts balance the conduct of both the prosecution and the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Dragoo*, 96 S.W.3d at 313. We apply the *Barker* factors, evaluating (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his speedy-trial right, and (4) the prejudice caused by the delay. *Barker*, 407 U.S. at 530. Courts analyze a "speedy-trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of 'the conduct of both the prosecution and the defendant.'" *Cantu*, 253 S.W.3d at 281 (quoting *Zamorano*, 84 S.W.3d at 648); *see Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017). No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Cantu*, 253 S.W.3d at 281; *Dragoo*, 96 S.W.3d at 313.

"While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280 (citing *Barker*, 407 U.S. at 531); *see Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)). "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Cantu*, 253 S.W.3d at 280 (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

The only possible remedy for a violation of the right to a speedy trial is to dismiss the prosecution. *Strunk v. United States*, 412 U.S. 434, 440 (1973). "Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.'" *Cantu*, 253 S.W.3d at 281 (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966)). In sum, the *Barker* factors have no "talismanic qualities," and we must therefore analyze the balancing test "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* at 281; *see Zamorano*, 84 S.W.3d at 648.

## A. Length of the Delay

"The length of delay is a double inquiry: A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length." *Hopper*, 520 S.W.3d at 924. The delay is measured from the time the defendant is arrested or formally accused. *Marion*, 404 U.S. at 313; *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). Although the Supreme Court

5

has generally held that a delay approaching one year is sufficient to trigger a speedy-trial claim, the precise length needed is dependent upon the particular facts of the case. *See Doggett*, 505 U.S. at 652 n.1. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. Additionally, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652. Thus, the longer the delay beyond the triggering length, the more prejudicial that delay is to the defendant. *Zamorano*, 84 S.W.3d at 649. In calculating the length of delay where, as here, there is no evidence that the State dismissed the indictments in bad faith and the defendant is not subject to actual restraints on his liberty, the time period between dismissal of the indictments and the subsequent reindictment is not considered in a speedy-trial analysis. *See United States v. Loud Hawk*, 474 U.S. 302, 310–11 (1986); *United States v. MacDonald*, 456 U.S. 1, 7 (1982); *Deeb v. State*, 815 S.W.2d 692, 705 (Tex. Crim. App. 1991) (citing *MacDonald*, 456 U.S. 1).

Here, the parties dispute the precise length of the delay and how the length of the delay should be calculated. The State contends that the speedy-trial clock in this case should begin at the time of mistrial, not arrest, because Appellee was afforded a speedy trial at the time and by way of the first criminal offense brought to trial. We disagree. Although case law in Texas is far from consistent in setting forth the beginning and end dates for calculating the length of delay, we agree with our sister court's holding in *State v. Davis* that, "[i]n the interest of justice, we [should] consider[] the length of the delay using the greatest possible time span, running from [the defendant's] indictment to the dismissal of his indictment." *State v. Davis*, 549 S.W.3d 688, 698 n.1 (Tex. App.—Austin 2017, no pet.). *But see State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (calculating the delay for a speedy-trial claim from the date of arrest to the date of the defendant's speedy-trial hearing).

6

Under similar facts in *Shaw v. State*, the Texas Court of Criminal Appeals calculated the length of the delay beginning from the date of the arrest, not the date of mistrial. *Shaw*, 117 S.W.3d at 886–89. Accordingly, we follow *Shaw*'s precedent and calculate the general length of the delay from the time of Appellee's arrest, September 4, 2011. *See id.* However, this does not end our analysis of the first factor.

There is no evidence that the State dismissed the charges in bad faith, and Appellee was incarcerated during the delay on his indecency conviction only, not on the current indictment. Accordingly, we do not include in our calculations the time between dismissal of the indictment and reindictment. *See MacDonald*, 456 U.S. at 10 n.12; *United States v. Duran-Gomez*, 984 F.3d 366, 374 n.7 (5th Cir. 2020) (citing *Cowart v. Hargett*, 16 F.3d 642, 645–46 (5th Cir. 1994)). Indeed, Appellee appears to concede that the time between dismissal and reindictment is not included in our calculations under these facts. Therefore, the total length of the delay was approximately sixty months: September 4, 2011 (arrest) to October 30, 2015 (State's dismissal), and July 31, 2018 (reindictment) to June 14, 2019 (order granting dismissal). This greatly exceeds the general length needed to trigger an analysis of the remaining factors, and it weighs heavily in favor of Appellee.

While the delay of trial in the instant case appears lengthy, these factors must still be weighed and balanced together under *Barker*. *Cantu*, 253 S.W.3d at 281. The reasons for delay will be reviewed in context with the other factors, including the lack of assertion by Appellee to his right to speedy trial and the extent to which Appellee suffered prejudice to his ability to now defend himself against two counts of aggravated sexual assault of a child as a result of the delay. *See Barker*, 407 U.S. at 530.

*B. Reasons for the Delay*

Under *Barker*, "different weights should be assigned to different reasons." *Munoz*, 991 S.W.2d at 822 (quoting *Barker*, 407 U.S. at 531). Deliberate attempts to delay the trial should be weighed heavily against the State, while a valid reason for the delay should not be weighed against the State at all. *Id.* A more neutral reason, such as official negligence or overcrowded courts, is afforded less weight but, nevertheless, is weighed against the State. *Barker*, 407 U.S. at 531. The State has the burden to provide a reason that would excuse the delay, and "in light of a silent record or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for the delay existed." *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976). Further, delay caused by the defendant or defendant's counsel is generally weighed heavily against the defendant. *See Munoz*, 991 S.W.2d at 822.

Here, the State offered numerous justifications for the delay. First, the State asserts that the approximately eight-month period of time between Appellee's arrest and first trial was justified because the State was entitled to a reasonable time to prepare for trial. In general, the State is entitled to a reasonable time to prepare for trial, and this time will not count against the State. *Shaw*, 117 S.W.3d at 889–90. In other cases involving an aggravated sexual assault of a child, Texas courts have found anywhere from three to six months to be a reasonable amount of time to prepare for trial. *See id.* (holding a three-month delay in order to prepare for trial a reasonable length of time); *State v. Vasquez*, No. 08-16-00089-CR, 2018 WL 4178462, at *6 (Tex. App.—El Paso Aug. 31, 2018, no pet.) (not designated for publication) (holding six months to be a reasonable time to prepare for a case involving sexual assault of a child); *De Los Santos v. State*, No. 05-08-01692-CR, 2010 WL 1744618, at *3 (Tex. App.—Dallas May 3, 2010, no pet.) (mem. op., not designated for publication) (holding the same as *Vasquez*). Although eight months

may exceed the length typically allowed by courts, Appellee expressly concedes that, except for one month of the time before the first trial, "trial commenced in a reasonable length of time." Accordingly, we conclude that approximately seven months of the time attributable to the State's preparation for trial shall not be held against the State under these facts.

Although the State further asserts that it was allowed a reasonable amount of time before the second trial to prepare for retrial, the State fails to cite—and this court fails to find—any authority to support this assertion. *See Shaw*, 117 S.W.3d at 889–90 (noting that the State was permitted a reasonable time to prepare for the first trial but not discussing the possibility of time to prepare for the second trial). We conclude that the trial court could have reasonably determined that the State did not need additional time to prepare for a second trial where the State did not provide circumstances demonstrating the need for such additional time.

Another reason for delay that will generally count against the defendant, as the State points out, is the time a defendant spends appealing his conviction. *Davis*, 549 S.W.3d at 700. This is because the State is wholly unable to retry him on the specific offense that is being challenged on appeal; doing so would violate the Constitution's Double Jeopardy Clause. *See id.* at 712–13 (Goodwin, J., concurring) (citing *Soffar v. State*, No. AP-75,363, 2009 WL 3839012, at *38–39 (Tex. Crim. App. Nov. 18, 2009) (not designated for publication)). In this case, however, Appellee only appealed his indecency conviction. The State could have retried Appellee on the two counts of aggravated sexual assault during the appeal of Appellee's indecency conviction without violating the Double Jeopardy Clause. Therefore, the State failed to prove its delay was justified under this theory.

The State also asserts that the time between mistrial and reindictment should not count against the State because a valid reason for their delay was to wait until Appellee's appellate proceedings concluded to determine whether a trial would be

necessary at all. At the hearing for Appellee's motion to dismiss for failure to provide a speedy trial, the former district attorney testified for the State, stating that, when a defendant was convicted of some charges while others were pending, it was always their office's policy to wait and see if the conviction was affirmed before dismissing the pending indictments. The State contends that this justification excuses the delay from the date of mistrial to the date this court issued a mandate on Appellee's indecency conviction. The State uses the same reason to justify the delay from the issuance of mandate to the date of dismissal of the two remaining indictments to wait and see whether Appellee would seek habeas corpus relief.

As support for its contention, the State cites to *Turner v. Estelle*, which held that "it is also valid for the state to wait until it is clear that the expense, inconvenience to witnesses and jurors, burden on prosecutorial and judicial resources, and vexation to the defendant that a trial inevitably causes will in fact be necessary." 515 F.2d 853, 857 (5th Cir. 1975). However, *Turner* is readily distinguishable; *Turner* only facially stands for the proposition that a state may "justifiably [choose] not to expend scarce judicial and prosecutorial resources in trying *a defendant facing a death sentence*, the execution of which obviously would have eliminated the need for any trial at all." *Id.* at 856 (emphasis added). In contrast, Appellee here did not appeal a death sentence following his conviction. The outcome of Appellee's trial and appeal for his indecency conviction did not inherently eliminate the necessity for prosecution of the two remaining charges. Therefore, *Turner* is not controlling under these facts.

The State also cites to *Easley v. State* as support in its brief and in its response to Appellee's motion to dismiss. 564 S.W.2d 742, 745 (Tex. Crim. App. 1978), *abrogated on other grounds by Henson v. State*, 407 S.W.3d 764 (Tex. Crim. App. 2013). There, a defendant was separately tried for the murder of two individuals. *See id.* In analyzing a speedy-trial claim, the Texas Court of Criminal Appeals held,

10

"That the appellant was being prosecuted on other charges constitutes a valid reason for the delay in bringing him to trial." *Id.* Assuming this rule is applicable here, the State nevertheless failed to establish that its prosecution of other offenses caused or contributed to the delay. *See McIntosh v. State*, 307 S.W.3d 360, 367–68 (Tex. App.—San Antonio 2009, pet. ref'd). During the hearing on the motion to dismiss, the State presented testimony from the former district attorney in the first trial, who stated that it had always been their office's policy "that if there were pending cases and we had a conviction that we would wait to see what the outcome of the appeal was." This testimony was consistent with the reason stated on the motions to dismiss, which contained checked boxes that indicated the charges were being dismissed because the defendant was convicted and sentenced in another case.

If the State truly delayed retrial because it was waiting on the outcome of the indecency appeal, the State could have dismissed the indictments as early as November 27, 2013 (the date the Texas Court of Criminal Appeals refused Appellee's petition for discretionary review) or, in the alternative, March 6, 2014 (the date this court issued mandate affirming the conviction of indecency with a child). Nevertheless, the State waited until October 30, 2015, to dismiss the indictments. The State contends that the delay after the issuance of mandate was justified by waiting to see if Appellee would seek habeas relief. Viewed in the light most favorable to the verdict, however, we conclude that the trial court could have reasonably disbelieved this justification and instead attributed this portion of the delay to negligence by the State. Therefore, the State failed to show that the portion of delay between mistrial and dismissal was justified.

The State next asserts that part of the delay before the second trial is attributable to Appellee because he requested new counsel a little over one month before the second trial was set to begin. The State correctly notes that delays caused by a defendant's voluntary and requested change in trial counsel generally weighs

11

against the defendant. *See Harper v. State*, 567 S.W.3d 450, 460 (Tex. App.—Fort Worth 2019, no pet.); *Porter v. State*, 540 S.W.3d 178, 182 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). The State must affirmatively establish that the change in counsel caused the delay. *See McIntosh*, 307 S.W.3d at 368. On March 19, 2019, Appellee's second appointed trial counsel filed a motion to withdraw as counsel because Appellee expressly desired to have his counsel discharged and replaced. Additionally, the motion stated that Appellee and his counsel could not communicate in a manner conducive to good attorney–client communication. The trial court granted the motion and, in its order appointing new counsel, reset the date of trial from May 6, 2019, to June 24, 2019. Accordingly, approximately one and one-half months of the delay is clearly attributable to Appellee and shall weigh against him, not the State.

At the opposite end of this factor, Appellee contends that the trial court could have reasonably inferred that the prosecution acted in bad faith and failed to promptly proceed against Appellee to gain a tactical advantage over him and, thus, that this factor should weigh heavily against the State. Appellee asserts that the State deliberately delayed retrying the two charges in question from the date of mistrial to the date the State dismissed the two indictments in order to prevent the exculpatory evidence from coming to light, which would have been harmful to the State's only conviction against Appellee. We disagree; the trial court could not have reasonably concluded that the State acted in bad faith in delaying retrial.

First, there is nothing in the record to support an inference that the State intentionally kept exculpatory evidence from discovery because the record clearly establishes that the exculpatory evidence was available from the beginning of the first trial for the defense counsel to review. From the trial court's own findings of fact and conclusions of law, which it issued on remand from Appellee's successful writ of habeas corpus, it found "[t]hat exculpatory/impeaching evidence was

12

available to the defense but was never presented to the jury." Although Appellee contends that merely having the evidence "available" to the defense under the State's open-file policy was insufficient disclosure, we are not currently tasked with reviewing a *Brady* violation because that issue is not before us. *See generally Brady v. Maryland*, 373 U.S. 83 (1963). Regardless of whether the exculpatory evidence should have been affirmatively given to defense counsel as opposed to merely being made available, the record plainly indicates that the State did not keep the video from the defense counsel.

Additionally, Appellee fails to adequately explain how a prompter retrial would have brought the exculpatory evidence to light sooner. In its findings of fact and conclusions of law in the habeas proceeding, the trial court expressly stated that "[t]he jury appears to have convicted [Appellee] of the *only offense for which there was clearly exculpatory evidence*" (emphasis added). Patently implicit in this holding is the conclusion that the evidence did not exculpate Appellee of the two current counts. Even assuming the exculpatory evidence came to light for the first time during the habeas corpus proceedings, the only reasonable inference that could be drawn from this is that the exculpatory evidence would have come to light sooner had Appellee initiated habeas corpus proceedings more promptly, regardless of whether the State initiated proceedings sooner on two counts unaffected by the exculpatory evidence.

Moreover, Appellee failed to show that the State intentionally attempted to gain a tactical advantage over the defendant in the case currently at issue. While deliberate attempts to delay the case in order to gain a tactical advantage will weigh heavily against the State, the State's purpose must be to gain a tactical advantage in *that* case. *See MacDonald*, 456 U.S. at 10 n.12; *Munoz*, 991 S.W.2d at 822. That exculpatory evidence would have acquitted Appellee of indecency with a child earlier is entirely irrelevant to a determination of whether the State attempted to

hamper the defense or gain a tactical advantage in its prosecution of the two counts of aggravated sexual assault of a child. Appellee does not contend that the exculpatory evidence would have been harmful to the indictment at issue. To the contrary, as we stated above, the record tends to establish the opposite inference: The evidence only exculpates Appellee of the indecency conviction. For these reasons, the record does not support an inference that the State intentionally delayed retrial of the current indictment in order to gain a tactical advantage in the current case against Appellee.

### C. Defendant's Assertion of His Right

A defendant's assertion of his speedy-trial right is entitled to strong evidentiary weight in determining whether the defendant was deprived of that right. *Barker*, 407 U.S. at 531–32. It is well settled that the State bears the burden to promptly bring the defendant to trial, but the accused nevertheless has the burden of proving that he asserted his right to a speedy trial. *Munoz*, 991 S.W.2d at 825; *Davis*, 549 S.W.3d at 704; *Barringer v. State*, 399 S.W.3d 593, 599 (Tex. App.—Eastland 2013, no pet.). A speedy-trial demand should be an unambiguous assertion clear enough to convey to the trial court or the State that the defendant is asserting his right to a speedy trial. *Davis*, 549 S.W.3d at 704 (citing *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013)); *Bailey v. State*, 885 S.W.2d 193, 201 (Tex. App.—Dallas 1994, pet. ref'd). Although it does not necessarily constitute a waiver, failing to assert the right indicates a lack of desire for a speedy trial. *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992). It also indicates a lack of prejudice. *Dragoo*, 96 S.W.3d at 314. As the delay becomes longer, a defendant who wishes to have a speedy trial is more likely to take some action to obtain it. *Id.* "Thus[,] inaction weighs more heavily against a violation the longer the delay becomes." *Id.* (quoting George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 23.40 (2d ed. 2001)).

Furthermore, "[t]he constitutional right is that of a speedy trial, not dismissal of the charges." *Cantu*, 253 S.W.3d at 281. A request that the court dismiss the charges for a speedy-trial violation, rather than a request for a prompt trial setting, attenuates the strength of a speedy-trial claim because it creates an inference that the defendant wants no trial—rather than a speedy trial. *See id.*; *Stiles v. State*, 596 S.W.3d 361, 367–68 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd). A defendant who moves for a dismissal before requesting a speedy trial must provide cogent reasons for this failure. *Cantu*, 253 S.W.3d at 283. "In some cases, defense counsel may legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly." *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983). Each case must turn on its own facts. *Id.*

Based on the record, nothing for which Appellee moved or that he filed prior to his April 23, 2019 motion expressly reflects a valid, unambiguous assertion of his right to a speedy trial. Notwithstanding the considerations discussed below, Appellee did not validly assert his right to a speedy trial until April 23, 2019— approximately two months before trial was set to occur—when he filed through counsel a motion to dismiss for failure to provide a speedy trial. Notably, Appellee's assertion first came in the form of a motion to dismiss instead of a motion for speedy trial. This indicates that Appellee did not want a speedy trial; he wanted no trial. *See Cantu*, 253 S.W.3d at 281; *Stiles*, 596 S.W.3d at 367–68. Although there are circumstances in which filing a motion to dismiss before requesting a speedy trial is warranted, such circumstances are not present under these facts. As we explain in our analysis of the fourth factor, there is nothing in the record to indicate that Appellee was prejudiced in any substantive manner, if at all. Even viewed in the light most favorable to the trial court's ruling, neither the defense counsel nor the

trial court could have reasonably inferred that filing a motion to dismiss before moving for a speedy trial was warranted under these facts.

Appellee contends that he first asserted his right to a speedy trial on March 22, 2012, by filing his Motion to Quash Consolidation Notice and Demand for Election. In this motion, however, Appellee merely prayed for the trial court to "require the State to elect the case to be tried beginning March 26, 2012." Appellee seizes upon the State's admission that Appellee, "at least indirectly," opposed the State's motion for continuance under this motion to quash and elect. Thus, Appellee contends that he asserted a right to a speedy trial through his conduct. We disagree. Appellee's motion to quash and demand for election could not have been reasonably interpreted as an assertion of his right to a speedy trial.

We reject the assumption that Appellee's motion to quash and demand for election constituted an "indirect opposition" to the State's motion for continuance. Appellee filed his motion to quash and demand for election four days before the State filed its motion for continuance; therefore, Appellee's motion to quash and demand for election could not have been made in opposition to the continuance. Moreover, the trial court could not reasonably interpret Appellee's demand for election as an unambiguous assertion of his right to a speedy trial. The above language on which Appellee relies establishes only a demand "to elect which of the four (4) cases [Appellee] will actually go to trial on March 26, 2012," and nothing more. At best, this language is more akin to a pro forma request to begin trial, which the Texas Court of Criminal Appeals has held does not constitute an assertion of the right to a speedy trial. *See Munoz*, 991 S.W.2d at 826. Even viewed in the light most favorable to the trial court's ruling, this motion does not reasonably or unambiguously assert a request for a speedy trial.

Appellee further asserts that his pro se motion to dismiss constitutes evidence of an earlier assertion of his right to a speedy trial. At some point between

August 29, 2018, and September 24, 2018, Appellee attempted to file a pro se motion to dismiss for failure to provide a speedy trial. However, Appellee was already represented by counsel and was not entitled to file a pro se motion. *See Porter*, 540 S.W.3d at 183 (citing *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007)). There is nothing in the record indicating that the motion was presented to the trial court before Appellee filed his motion to dismiss on April 23, 2019. Texas courts are often hesitant to use such pro se motions as strong evidence of an assertion of the speedy-trial right. *See id.* ("It is well settled that a pro se speedy-trial motion, filed while the defendant has counsel and on which the trial court does not rule, is not subject to appeal."); *Ussery v. State*, 596 S.W.3d 277, 288 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (holding that a pro se motion for speedy trial may constitute some effort to invoke his right to a speedy trial, "but that invocation was not unambiguous . . . because the pro se motions were not required to be considered by the trial court and it is unclear if, or when, those motions or other assertions of his right to speedy trial were presented to the trial court"). Assuming that the pro se motion constituted some evidence of an assertion of his right to a speedy trial, our analysis of the third factor remains largely unaffected. Appellee still waited over fifty months—of time relevant to this speedy-trial claim—to assert his right to a speedy trial in his pro se motion; Appellee's pro se motion requested only dismissal of the charges rather than a speedy trial; and Appellee did nothing to reassert his right thereafter for another seven to eight months until his counsel filed the April 23, 2019 motion to dismiss for failure to provide a speedy trial.

Appellee also urged the trial court to "take into consideration that for the most time after the mistrials were granted [Appellee] had no trial counsel." While the two indictments of aggravated sexual assault of a child were still pending after the trial court declared a mistrial, Appellee's lead trial counsel filed a motion to withdraw as counsel—with the written consent of Appellee—on December 23, 2013. Appellee

17

was not appointed new counsel for the current charge until August 30, 2018. During this period, Appellee was represented by appellate counsel while pursuing his conviction for indecency with a child and subsequent habeas proceedings.

Excluding the time between dismissal of the charges and reindictment, Appellee remained unrepresented on the pending indictments for approximately twenty-three months. For the purposes of this appellate review only, we will assume that Appellee's counsel on appeal for the indecency charge did not constitute representation on the pending indictments such that Appellee should have been aware of his right to a speedy trial or how to assert it. *See Texas v. Cobb*, 532 U.S. 162, 172–73 (2001) (right to counsel is offense specific). In light of that assumption, when viewed in the light most favorable to the court's ruling, the trial court could have reasonably inferred under the circumstances that Appellee was not at fault for his failure to assert his right to a speedy trial during the twenty-three months he was without counsel on the pending indictments. *See Barker*, 407 U.S. at 528 n.28 (in rejecting the old demand-waiver rule, the Court noted, "[T]here are a number of situations, such as where . . . the defendant is without counsel, in which it is unfair to require a demand." (quoting Am. Bar Ass'n Project on Standards for Criminal Justice, *Speedy Trial* 17 (Approved Draft 1968))). *Cf. Dragoo*, 96 S.W.3d at 314–15 ("Here, appellant failed to assert his speedy trial right for 3 ½ years, until just before trial, although he was represented by counsel at all relevant times and no question is raised as to the competency of such counsel."). Although the period Appellee was without counsel will not weigh against him for failing to assert his right, neither should this period constitute a sort of "constructive assertion" of his right to a speedy trial. Appellee did not timely assert his right to a speedy trial regardless of whether he was represented or not. Therefore, even when indulging the referenced assumptions favoring Appellee, we must treat the period Appellee was unrepresented by counsel as neither weighing for or against him. We conclude

that the time, manner, and frequency of Appellee's assertion of his right to a speedy trial cause the third factor to weigh moderately, but not heavily, against Appellee.

### D. Prejudice

The final factor requires an analysis of whether and to what extent the defendant suffered prejudice as a result of the delay. *Barker*, 407 U.S. at 532. We assess the weight of any prejudice in light of the interests that the right to a speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the accused's anxiety and concern; and (3) to limit the possibility that the accused's defense will be impaired. *Id.* Of these subfactors, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Here, Appellee did not allege or present any evidence of oppressive pretrial incarceration or pretrial anxiety or concern to the trial court. Thus, we direct our attention to the most important of these subfactors, the extent to which the accused's defense was impaired. *See Dragoo*, 96 S.W.3d at 315 (holding that a particular claim of prejudice may not support an appellate court's determination of the prejudice factor when "appellant made no such argument to the trial court").

Under this subfactor, a defendant generally has the burden of showing some prejudice but need not necessarily make a showing of actual prejudice. *Balderas v. State*, 517 S.W.3d 756, 772 (Tex. Crim. App. 2016). "We assess prejudice according to a sliding scale." *Hopper v. State*, 495 S.W.3d 468, 479 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 520 S.W.3d 915 (Tex. Crim. App. 2017). "The longer the State's delay and the greater its official negligence, the less the defendant must show that he was actually prejudiced." *Id.*; *see Cantu*, 253 S.W.3d at 280–81. Affirmative proof of particularized prejudice is not essential in every case because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655; *see Shaw*, 117

S.W.3d at 890. On the other hand, this presumption of prejudice is extenuated by the defendant's acquiescence in the delay. *Dragoo*, 96 S.W.3d at 315; *see Davis*, 549 S.W.3d at 708 ("In cases with excessively lengthy delays to which the defendant does not acquiesce, an inference of actual prejudice may arise. Such inference of prejudice does not arise here because . . . Davis acquiesced to the trial delay . . . ." (citations omitted)).

Here, the length of the delay was approximately sixty months, which is excessive enough to ordinarily be considered presumptively prejudicial to Appellee's defense. *See Dragoo*, 96 S.W.3d at 315 (3 ½ year delay presumptively prejudicial). *But see United States v. Reagan*, 725 F.3d 471, 487 (5th Cir. 2013) (citing *United States v. Parker*, 505 F.3d 323, 328–29 (5th Cir. 2007) (holding that delays of less than five years cannot support a presumption of prejudice based on duration alone)). However, this presumption is extenuated by Appellee's silent acquiescence in the delay during the time he was represented by counsel. *See Dragoo*, 96 S.W.3d at 315. The record clearly establishes that Appellee was aware of the charges against him and nevertheless failed to validly assert his right until approximately two months before trial was set to begin when he filed his April 23, 2019 motion to dismiss for failure to provide a speedy trial. *See Shaw*, 117 S.W.3d at 890–91 (finding extenuation of prejudice where the defendant "quietly acquiesced" to the State's delay); *Dragoo*, 96 S.W.3d at 314–15 (holding the defendant "quietly acquiesced" to the delay by failing to assert his right for three and one-half years although represented by counsel); *Munoz*, 991 S.W.2d at 829; *Davis*, 549 S.W.3d at 708. We acknowledge, however, that Appellee could not acquiesce to the delay during the maximum possible time period calculated above during which Appellee was not represented by trial counsel. *See Barker*, 407 U.S. at 528 n.28; *Dragoo*, 96 S.W.3d at 314–15. Furthermore, it is unclear to what extent Appellee's pro se motion to dismiss constitutes a lack of acquiescence because the record is

20

silent on whether the pro se motion was ever presented to the trial court and the State before Appellee filed his April 23, 2019 motion. Even if we assume Appellee's pro se motion constituted some affirmative demonstration of his lack of acquiescence, Appellee subsequently resumed quiet acquiescence for seven to eight months thereafter until he filed his April 23, 2019 motion.

Therefore, Appellee's acquiescence to approximately thirty-seven of the fifty-one and one-half months of delay attributable to the State sufficiently extenuated the presumption of prejudice to such an extent that does not absolve Appellee of his burden to show some prejudice. *See Davis*, 549 S.W.3d at 708; *Hopper*, 495 S.W.3d at 474, 478 (holding no presumption of prejudice applies where the defendant acquiesced to more than eighteen and one-half years of a delay of more than twenty years); *State v. Jones*, 168 S.W.3d 339, 352 (Tex. App.—Dallas 2005, pet. ref'd) (holding a twenty-one-month delay attributable to the State insufficient to raise a presumption of prejudice); *see also Traylor v. State*, 534 S.W.3d 667, 676–77 (Tex. App.—Corpus Christi–Edinburg 2017) (holding that the presumption of prejudice may be extenuated "by the defendant's acquiescence in *some or all* of the delay") (emphasis added), *rev'd on other grounds*, 567 S.W.3d 741 (Tex. Crim. App. 2018). Moreover, any presumption of prejudice that may apply is further extenuated because Appellee only sought dismissal of his claims; Appellee never requested or moved for a speedy trial itself. *See Cantu*, 253 S.W.3d at 284–86; *Dragoo*, 96 S.W.3d at 314; *Stiles*, 596 S.W.3d at 367–68. We now determine whether Appellee sufficiently made a showing of some prejudice. In his response to the State's response to his motion to dismiss, Appellee contended that he was prejudiced by the delay because "[i]t is doubtful that after 7 years the trial witnesses . . . will have any better recollection or memory than did the District Attorney. . . . All the other witnesses that testified . . . will probably not be able to recall material facts that might aid the Defendant in the trial. . . . Will their memories be any better?" He offered

the district attorney's testimony from the hearing on his motion to dismiss as evidence to support this assertion, stating that the district attorney could not remember certain "facts and occurrences" from that trial. However, the "facts and occurrences" that the district attorney could not remember were only the cause numbers of the cases and whether the verdict was handed directly to the judge; these facts are certainly not relevant to any of the proceedings before the trial court, nor are they facts that an ordinary witness would be expected to remember at any given time. *See Barker*, 407 U.S. at 534 (holding that two very minor lapses of memory, one on the part of a prosecution witness, were in no way significant to the outcome and would not support a showing of prejudice); *State v. Smith*, 76 S.W.3d 541, 553 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("A defendant is required to show that any lapses of memory are in some way significant to the outcome of the case." (citing *Munoz*, 991 S.W.2d at 829)). Even viewed in the light most favorable to the verdict, Appellee offers no relevant instances of fading memories and relies entirely on speculation to support his assertion. Conclusory assertions are not sufficient to carry a defendant's burden to show that he was prejudiced by delay. *Munoz*, 991 S.W.2d at 829.

Appellee also contends that he was prejudiced by the delay because the child-complainant is now seventeen years old and will make a more impressive witness than when she was ten years old. Appellee asserts that this claim of prejudice is grounded in the "commonsense notion that a 17 year old will be more adept at fielding questions and standing up to cross-examination that [sic] a 10 year old child." However, the record is entirely devoid of any evidence tending to support this assertion and would require pure speculation on the part of the trial court in so finding. *See Dragoo*, 96 S.W.3d at 311, 315; *Munoz*, 991 S.W.2d at 829. Even if we assume that a trial court could have reasonably found that the child-complainant will now make a more impressive witness, the result remains the same. The current

interest with which we are concerned—and the most serious interest that the right to a speedy trial is designed to protect—is the impairment of the defendant's ability to adequately prepare his defense. *See Barker*, 407 U.S. at 534; *State v. Fisher*, 198 S.W.3d 332, 342 (Tex. App.—Texarkana 2006, pet. ref'd). That the passage of time may make a State's witness better at answering questions on the stand does not create a reasonable inference that the defendant's ability to adequately prepare his own defense is in any way inhibited. The child-complainant is still subject to cross-examination, and defense counsel is free to impeach her on any subsequent testimony inconsistent with the testimony she gave at the first trial. This court finds no authority involving a similar contention, much less any authority suggesting that such a showing impairs or prejudices a defendant's ability to adequately defend himself. For these reasons, Appellee failed to make a showing of prejudice. This factor weighs heavily against Appellee.

### E. Balancing

Balancing the factors, the length of the delay (approximately sixty months) weighs heavily against the State. The State presented a valid reason for the delay attributable to trial preparation (approximately seven months before the first trial). Roughly one and one-half months of the delay, caused by Appellee's request to change counsel before the second trial, weighs against Appellee. The remainder of the second factor weighs lightly against the State. Appellee asserted his right to a speedy trial in a time, manner, and frequency that weighs moderately against him, but not heavily because of the twenty-three months that Appellee remained unrepresented by trial counsel. The length of the delay attributable to the State created a presumption of prejudice, but the presumption was sufficiently extenuated by Appellee's acquiescence in the delay. Furthermore, the inference that Appellee wanted no trial instead of a speedy trial also mitigates any finding of prejudice. Lastly, Appellee failed to demonstrate that he suffered any actual prejudice; if any

23

prejudice could be inferred from the record, such prejudice was minimal. Therefore, the final factor weighs heavily against Appellee.

While we are mindful of the deference that we must give to a trial court's factual findings and reasonable inferences supported by the record, the weight of the *Barker* factors, as applied here, clearly demonstrates that Appellee's right to a speedy trial was not violated. *See Barker*, 407 U.S. at 534–36; *Munoz*, 991 S.W.2d at 829–30; *Davis*, 549 S.W.3d at 709–10; *Jones*, 168 S.W.3d at 352; *Smith*, 76 S.W.3d at 553–54. We sustain the State's first issue on appeal.

*II. Due Process*

In its second issue on appeal, the State contends that Appellee's due process rights were not violated. In Appellee's motion to dismiss for failure to provide a speedy trial and in his response to the State's response to Appellee's motion to dismiss, Appellee asserted that his due process rights were violated in addition to his speedy-trial rights. To the extent that the trial court found that the State had violated Appellee's due process rights, we conclude that the trial court erred.

While the right to a speedy trial protects against undue delay during the time that charges are pending, "[a]ny undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." *MacDonald*, 456 U.S. at 7. A defendant's due process claim is "evaluated by a different and more onerous standard than alleged speedy trial violations." *Griffith v. State*, 976 S.W.2d 686, 695 (Tex. App.—Tyler 1997, pet. ref'd). A defendant can establish a due process violation incurred by undue delay if he establishes "that the delay: 1) caused substantial prejudice to his right to a fair trial, and 2) was an intentional device used to gain a tactical advantage over the accused." *State v. Krizan-Wilson*, 354 S.W.3d 808, 814–15 (Tex. Crim. App. 2011); *see also United States v. Gouveia*, 467 U.S. 180, 192 (1984) (Due Process Clause requires dismissal of indictment where government's delay was deliberate

24

device to gain advantage and where delay caused defendant actual prejudice); *Ibarra v. State*, 11 S.W.3d 189, 193 (Tex. Crim. App. 1999) (citing *Gouveia*, 467 U.S. at 192). Some courts have extended the second prong of this test to include "other impermissible bad faith purposes" without defining the phrase. *Michaelwicz v. State*, 186 S.W.3d 601, 608 (Tex. App.—Austin 2006, pet. ref'd) (citing *United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir. 1996)). We assume the protections against pre-indictment delay contemplated by both the federal due process provisions and the Texas due process provisions are the same, and we apply the same standards. *Saul v. State*, 510 S.W.3d 672, 687–88 (Tex. App.—El Paso 2016, pet. ref'd); *see Watts v. State*, No. 10-18-00033-CR, 2020 WL 5938778, at *3 (Tex. App.—Waco Aug. 26, 2020, no pet.) (citing *Saul*, 510 S.W.3d at 687–88).

Appellee contends that the State acted in bad faith in delaying reindictment after dismissal of the charges because the State was attempting to hide the video of the forensic interview of the child during which she denies that Appellee touched her breasts. Appellee claims that this exculpatory evidence kept Appellee incarcerated on the indecency-with-a-child conviction until the forensic interview video of the victim came to light. We disagree. As we discussed in the second factor of our speedy-trial analysis, Appellee failed to establish that the State acted in bad faith in delaying retrial to keep that evidence from being discovered. The trial court acknowledged that the evidence was available to the defendant at the first trial, and regardless, there is no evidence that a more prompt reindictment of the two counts of aggravated sexual assault of a child would have brought the exculpatory evidence to light sooner. Appellee also failed to establish actual prejudice from the delay that occurred before reindictment. As we determined in our discussion of the fourth factor of the speedy-trial claim, Appellee presented no evidence of missing witnesses, lost evidence, or some other impairment of his ability to adequately prepare his defense. The record is unclear on whether Appellee sufficiently

presented to the trial court his argument that the prejudice suffered from pretrial incarceration was a result of the delay before reindictment. Assuming *arguendo* that he sufficiently presented this argument to the trial court, the record is devoid of any evidence tending to establish that he suffered actual prejudice in the case before us or that any such prejudice was substantial. Prior to the reindictment, Appellee was incarcerated on another offense, not on the indictment before this court. Appellee does not contend that he was prejudiced in any way in the case before us; he, therefore, failed to meet his burden. To the extent the trial court determined that Appellee's due process rights were violated, the trial court erred. Accordingly, we sustain the State's second issue on appeal.

### *This Court's Ruling*

We reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.


W. BRUCE WILLIAMS

JUSTICE


May 28, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.